IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

DAVID A. WOOTEN,

Plaintiff,

v. No. 1:18-cv-00206-JDB-CHS

CITY OF CHATTANOOGA, TENNESSEE, and MICHAEL EARLY, in his official and individual capacities,

Defendants.

---

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

---

INTRODUCTION

This action was initially brought in the Circuit Court of Hamilton County, Tennessee, on August 7, 2018, by the Plaintiff, David A. Wooten, against the Defendants, the City of Chattanooga, Tennessee (the "City") and Michael Early, individually and in his official capacity as a police officer employed by the City, pursuant to 42 U.S.C. § 1983, alleging that Early used excessive force against him in violation of the Fourth and Fourteenth Amendments. (Docket Entry ("D.E.") 1-1.) The complaint also asserted various state law claims. The matter was removed to this Court on September 5, 2018, in accordance with 28 U.S.C. § 1441. (D.E. 1.) Before the Court are the Defendants' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] (D.E. 19, 23.)

[1]The City also seeks in its dispositive motion dismissal of Plaintiff's state law claims under Fed. R. Civ. P. 12(c). (*See* D.E. 23 at PageID 236.) However, because, for reasons set forth herein, the Court will not consider the state claims, no analysis will be made regarding Rule 12(c).

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted. On August 14, 2017, at approximately 5:00 p.m., Early was on duty as a property crimes detective for the City[2] in the 5000 block of Rossville Boulevard in Chattanooga, where he was searching for a burglary suspect. He was familiar with a business located at 5017 Rossville Boulevard called Brew & Cue and knew the owner, Darrin Webb. He was also aware that Webb was a convicted felon who had served time in federal prison.

As he travelled down State Street, which ran behind the club, he observed Wooten standing next to his truck, which was loaded down with construction tools and equipment, and engaged in conversation with Webb. Early was dressed in his "soft uniform," consisting of khaki pants and a dark polo shirt with a badge logo on the left front chest. The officer recognized Wooten, who according to a state court indictment went by the aliases "Baby D," "Bald Head," and "Ball Head" (D.E. 20-1 at PageID 107), as he had known him for several years. Early was also generally familiar with Plaintiff's criminal history. In fact, he had attempted to elicit Wooten's assistance as an informant about a year earlier. At the time he spotted Plaintiff, Early was aware of the existence of an outstanding warrant for Wooten's arrest. The officer called for backup and was soon joined by Officer Chad Yates. Early also contacted the Rossville, Georgia, Police Department, as the establishment was near the Tennessee-Georgia state line.

When Yates arrived, Early proceeded into the Brew & Cue's parking lot to effect the arrest. Wooten got into his truck. Early pulled his unmarked vehicle, a black Ford Fusion, in front of Plaintiff's vehicle. Rossville Officer Robert Llewellyn parked across a nearby railroad track,

[2]According to the affidavit of Toby L. Hewitt, Lieutenant of Internal Affairs for the Chattanooga Police Department, Early began his employment as a police officer with the City in October 1993. (D.E. 23-3 ¶ 7.)

exited his cruiser, and approached the parking lot on foot. Early got out of his car and walked toward the front of Wooten's truck. Plaintiff put the truck in reverse, causing the taillights to engage. Early drew his weapon, began giving Wooten commands, and approached the truck directly in front of Plaintiff. At that point, Wooten was unable to back up any further because the building behind him blocked his escape to the rear.

Early several times commanded Wooten to get out of the truck and show his hands. Yates, who was in full police uniform, moved to the driver's side of the truck with his hand on his weapon and also began giving verbal commands. As Yates approached the truck, Llewellyn pulled his firearm and pointed it at Wooten. According to the Defendants, the Plaintiff again moved the truck back several feet, stopped, and shifted into drive, heading directly toward Early. At that time, Early was still shouting at Wooten to get out of the truck and show his hands. Early submits that, because he feared imminent bodily injury or death, he fired at Wooten, striking him in the chest. Llewellyn also discharged his weapon.

Plaintiff denies that he failed to follow Early's commands because he could not hear them. He points to his deposition testimony, in which he recalled that he was approached by an individual, whom he did not know to be a police officer, who yelled, "Don't make me kill you MF'er," and then shot him. (D.E. 20-5 at PageID 155.) He further claims that he drove forward and to the right, and not directly toward the officer. The nonmovant also takes exception to Early's claimed fear of imminent bodily injury or death, arguing that "[i]t was his [(Early's)] choice to step in front of Plaintiff's truck while pointing a gun at Mr. Wooten in an effort to block Plaintiff from leaving." (D.E. 26 at PageID 324.)

Wooten left the scene and drove to the home of a friend, who called for an ambulance. Plaintiff was hospitalized until September 1, 2017, when he was released and placed under arrest.

On September 13, 2017, a grand jury indicted him for aggravated assault[3] on Early and Llewellyn, reckless endangerment, and evading arrest, all felonies, in connection with the August 14, 2017, incident at the Brew & Cue. He entered into a plea and was sentenced to a period of incarceration.

STANDARD OF REVIEW

Rule 56 provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Because a motion for summary judgment necessarily implicates the substantive evidentiary standard of proof that would apply at the trial, [courts] must determine whether reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict." *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (brackets and internal quotation marks omitted). "Once the moving party has met the initial burden of showing the absence of a genuine dispute of material fact, the non[]moving party must then come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted). "In deciding whether summary judgment [is] appropriate, the court views the evidence in the light most favorable to the nonmoving party." *Morehouse v. Steak N Shake*, 938 F.3d 814, 818 (6th Cir. 2019) (quoting *Fed. Trade Comm'n v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 629 (6th Cir. 2014)). "Summary judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action rather than a disfavored procedural shortcut." *Fed. Deposit Ins. Corp. v. Jeff Miller Stables*, 573 F.3d 289, 294 (6th Cir.

[3]The indictment charged Wooten with "unlawfully and intentionally or knowingly caus[ing] Michael Early, a law enforcement officer, to reasonably fear imminent bodily injury by use of a deadly weapon, in violation of Tennessee Code Annotated [§] 39-13-102 . . ." (D.E. 20-1 at PageID 109.)

2009) (quoting *Celotex Corp. v Catrett*, 477 U.S. 317, 327 (1986)) (internal quotation marks omitted).

ARGUMENTS OF THE PARTIES AND ANALYSIS

*Section 1983 Claims Generally*

Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

To state a claim under the statute, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018). "Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013) (quoting *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir. 2000)) (internal quotation marks omitted).

*Claims Against the City and Early in his Official Capacity*

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. Thus, "where a complaint names an official-capacity defendant and the entity of which the officer is an agent," courts in this circuit have dismissed the official

capacity defendant as redundant. *See Adam Comm'y Ctr. v. City of Troy*, 381 F. Supp. 3d 887, 899-900 (E.D. Mich. 2019) (collecting cases). Accordingly, Plaintiff's official capacity claims against Early are DISMISSED. The Court now turns to Wooten's claims against the City.[4]

A municipality is a "person" for purposes of § 1983 and therefore may be held liable for injuries for which it bears responsibility. *Morgan v. Fairfield Cty., Ohio*, 903 F.3d 553, 565 (6th Cir. 2018), *cert. denied,* 139 S. Ct. 1377 (2019). However, municipalities cannot be held liable on a *respondeat superior* theory. *Monell*, 436 U.S. at 691. To prevail, "a plaintiff must show that the alleged violation occurred because of a municipal policy, practice, or custom[.]" *Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016). "Along with identifying the conduct properly attributable to the municipality, a plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Rayfield v. City of Grand Rapids, Mich.*, 768 F. App'x 495, 510 (6th Cir. 2019) (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks and emphasis omitted). Stated differently, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must

[4]In his complaint, Plaintiff gave "notice of potential" claims to the City, which included failure to train, supervise, investigate, and discipline. However, in his response to the dispositive motion, Wooten did not dispute that the City did not have a policy, custom, or practice of training officers to use excessive force; that it adequately monitored, supervised, and evaluated the performance of officers and their use of deadly force; that it disciplined officers for their actions when appropriate; or that Early received adequate training in the use of force. Nor did he offer any argument relative to claims of failure to train, supervise, investigate, or discipline. Therefore, the Court assumes any such claims have been abandoned.

demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Chapman*, 814 F.3d at 462 (quoting *Brown,* 520 U.S. at 404).

A policy or custom does not have to be a written law; "it can be created 'by those whose edicts or acts may fairly be said to represent official policy.'" *Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010) (quoting *Monell*, 436 U.S. at 694). In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), the United States Supreme Court clarified that liability "may be imposed for a single decision by municipal policymakers[.]" *Pembaur*, 475 U.S. at 480 (holding that the actions of a county prosecutor in ordering deputy sheriffs to enter a business in violation of the Fourth Amendment were sufficient to impose liability on the municipality under § 1983 because the prosecutor was acting as the county's final policymaker); *see also Moldowan v. City of Warren*, 578 F.3d 351, 394 (6th Cir. 2009). In response to the instant motion, Wooten relies on *Pembaur* for the proposition that Early's single act in pulling the trigger constituted a policy for which the City is liable.

However, as the Sixth Circuit has pointed out, "[a]lthough *Pembaur* recognized policy-maker liability, the Court made clear that 'not every decision by municipal officers automatically subjects the municipality to § 1983 liability.'" *Moldowan*, 578 F.3d at 394 (quoting *Pembaur*, 475 U.S. at 482). "Rather, municipal liability 'attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'" *Id.* (quoting *Pembaur*, 475 U.S. at 482). "In other words, the official must be 'responsible for establishing final government policy respecting such activity before the municipality can be held liable.'" *Id.* (quoting *Pembaur*, 475 U.S. at 483).

"[M]ere authority to exercise discretion while performing certain functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Miller v. Calhoun Cty.*, 408 F.3d 803, 814 (6th Cir. 2005) (quoting *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993)). "[I]n determining whether an employee occupies a policymaking position, consideration should be given to whether the employee formulates plans for the implementation of broad goals." *Hager v. Pike Cty. Bd. of Educ.*, 286 F.3d 366, 376 (6th Cir. 2002) (quoting *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 914 (6th Cir. 1991)) (ellipses omitted).

Plaintiff has pointed to no evidence in the record to suggest that Early was vested with any authority beyond discretion in the exercise of the particular functions for which he was employed. *See Pembaur,* 475 U.S. at 481-82 ("The fact that a particular official -- even a policymaking official -- has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."). He does not argue that Early's decisions were not reviewable, that he was not constrained by the policies of his superiors, or that he was able to formulate plans for broader goals. Instead, Wooten merely suggests that, because Early was an employee of the City, his every action was sufficient to impose liability on his employer. Such an assertion falls short of what is necessary to survive a summary judgment motion on a municipal liability claim. *See Miller*, 408 F.3d at 814 (summary judgment in favor of municipality appropriate where plaintiff was unable to show that correctional facility shift commander, who may have had authority to make limited decisions concerning inmate medical care during her shift, was

final policymaker, as there was no evidence her decisions were not subject to review or that she could formulate plans for the implementation of broader goals). Indeed, to find otherwise would be to turn *Monell*'s rejection of *respondeat superior* liability on its head.

Plaintiff also seeks to impose liability on the City for its failure to fire Early after disciplining him for two infractions committed during his employment -- a suspension from duty for three days arising from a finding of guilt for "conduct unbecoming/conformance to law (reckless driving)" in 2008 and relief from duty based on an arrest for domestic assault in 2014. Despite having notice of Early's propensity for violence based on these occurrences, the argument goes, the City continued to employ him.

The Court assumes that Wooten is attempting to put forth a claim for negligent retention. In *Brown*, the Court considered § 1983 municipal liability in the similar context of negligent hiring.[5] *Brown*, 520 U.S. at 399-400. In doing so, the Court cautioned that, "[e]very injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury." *Id.* at 410. Thus, "[t]o prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* In order to establish municipal liability, a plaintiff must show that "adequate scrutiny of an applicant's background would lead a reasonable

[5]In his complaint, Wooten also gave notice to the City of a potential claim for negligent hiring and screening. *See supra* n.4. However, he has alleged no facts regarding Early's screening, or lack thereof, or hiring. As a consequence, any claim for negligent hiring or screening is dismissed for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right[.]" *Id.* at 411. It must be shown that "*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* at 412. *Brown's* analysis has been applied in the Sixth Circuit to a § 1983 negligent retention claim. *See Smith v. City of Troy, Ohio*, 874 F.3d 938, 947 (6th Cir. 2017) (per curiam) (citing *Brown*, 520 U.S. at 411) (to survive summary judgment on a negligent retention claim, a plaintiff must show that the "plainly obvious consequence of . . . retaining [the] officer[] would be the deprivation of a third party's federally protected rights"), *reh'g en banc denied* (Jan. 4, 2018).

As noted above, Early was suspended for reckless driving. The domestic assault charge arose from an argument during which he headbutted his wife. Wooten argues liability on behalf of the City only in conclusory, *ipse dixit* fashion without a single case citation. He has made no effort whatever to demonstrate that the suspension and arrest would lead a reasonable municipal employer to conclude that the "plainly obvious consequence" of its retention of Early as an employee would be the deprivation of a citizen's constitutional rights in the form of excessive force. Thus, his claim cannot survive summary judgment.

Finally, the Plaintiff, again in a conclusory manner, submits that, if Early's actions were performed in accordance with City policy, practice, and custom, the municipal Defendant is liable for acting with deliberate indifference to the constitutional rights of the public. The Court will construe Plaintiff's argument as referencing a custom of tolerating the use of excessive force. A "custom-of-tolerance claim requires a showing that there was

a pattern of inadequately investigating similar claims." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). The pattern to be shown must be "clear and persistent." *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005). Wooten has made no effort to establish the existence of other excessive force complaints or claims. Indeed, in response to the motion for summary judgment, Plaintiff did not dispute the City's statement that its records did not establish that the municipal Defendant knowingly permitted or encouraged officers by a pattern of inaction to violate the constitutional rights of its citizenry, or that it did not have a policy, custom, or practice of failing to investigate citizen complaints. Thus, this avenue to municipal liability is also closed.

Based on the foregoing, the Plaintiff's claims against the City are DISMISSED.[6]

*Claims Against Early in his Individual Capacity*

Early argues that Wooten's individual capacity claims against him are barred by the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), in which the Court held that "a plaintiff cannot assert a § 1983 claim if success on that claim would necessarily imply the invalidity of an underlying state criminal conviction[.]" *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014) (quoting *Heck*, 512 U.S. at 486-87) (internal quotation marks omitted).

At the outset, Plaintiff, while conceding that he received a criminal conviction on the underlying aggravated assault, argues that the "best interest plea" into which he entered is inadmissible under Rule 410 of the Federal Rules of Evidence, which prohibits the admission of a

[6]Because the Court has dismissed the claims against the City on other grounds, it need not address the municipal Defendant's assertion that Plaintiff had failed to establish the existence of a constitutional violation.

nolo contendere plea in a civil case. *See* Fed. R. Evid. 410(a)(2). Wooten refers the Court to no caselaw supportive of his position. However, the Court notes that the Sixth Circuit has recognized that Rule 410 prohibits the use of pleas, not *convictions*. *See Myers v. Sec'y of Health & Human Servs.*, 893 F.2d 840, 843 (6th Cir. 1990) (the rule "prohibit[s] use of a *plea* of *nolo contendere*, not a *conviction* pursuant to a *nolo* plea"); *see also Olsen v. Correiro*, 189 F.3d 52, 58-59 (1st Cir. 1999) (applying *Myers* in § 1983 context, finding that "[o]nly the nolo *plea* itself is barred by the relevant language of the rule.").

To the extent Wooten suggests that his best interest, or Alford, plea cannot result in a conviction to which *Heck* applies, he is again incorrect. Under *North Carolina v. Alford*, 400 U.S. 25 (1970), after which the so-called Alford plea is named, "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Alford*, 400 U.S. at 37. Courts in this Circuit have held that an Alford plea amounts to a criminal conviction for *Heck* purposes. *See Rogers v. Reed*, Civil Action 2:14-cv-2750, 2018 WL 4952484, at *3 (S.D. Ohio Oct. 12, 2018) (collecting cases), *report and recommendation adopted* 2018 WL 5891683 (S.D. Ohio Nov. 9, 2018). Moreover, Early's use of force against Plaintiff would have constituted an affirmative defense to the aggravated assault charge to which Wooten pleaded. *See Thomas v. Buck*, No. 3:16-CV-631-TAV-DCP, 2019 WL 6255838, at *8 (E.D. Tenn. Nov. 22, 2019) (citing Tenn. Code Ann. § 39-11-611, *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993) ("self-defense is a complete defense to crimes of violence")) ("Defendants' uses of force against [p]laintiff would have been an affirmative defense to [p]laintiff's charges for assault on [defendant officers] to which [p]laintiff pled guilty under Tennessee law").

Wooten also submits that, even if *Heck* is applicable, a judgment in his favor in this case would not imply the invalidity of his conviction for aggravated assault against Early. Sixth Circuit precedent indicates otherwise. In *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005), officers were called to investigate a domestic disturbance and, upon arriving at the residence, spoke with Cummings in the doorway. *Cummings*, 418 F.3d at 679. Through the opening, the officers could smell marijuana. *Id.* When officers asked about the "weed," Cummings attempted to close the door, at which point the officers forced their way inside. *Id.* In the ensuing struggle to arrest Cummings, who resisted and attempted to flee, officers struck him with their fists and batons and pepper-sprayed and tased him until he was subdued. *Id.* at 679-80. Cummings pleaded no contest to misdemeanor assault on one of the officers. *Id.* at 680.

Subsequently, Cummings sued the officer for excessive force pursuant to § 1983. *Id.* at 679. On appeal from the district court's grant of summary judgment on *Heck* grounds, the Sixth Circuit determined that "success on Cummings' excessive force claim would necessarily imply the invalidity of his state assault conviction," as "[t]he struggle between Cummings and the officers gave rise to both Cummings' assault conviction and the excessive force claim, and the two are inextricably intertwined." *Id.* at 682-83. Thus, *Heck* barred the case from moving forward.[7] *Id.* at 683.

Similarly, in *Parvin v. Campbell*, 641 F. App'x 446 (6th Cir. 2016), officers were dispatched to Parvin's home on a domestic dispute call. *Parvin*, 641 F. App'x at 446. According to the version of events provided to the court by Chattanooga police officer David Campbell and

[7]The Sixth Circuit has held the *Heck* bar does not apply, however, where the alleged excessive force occurred *post arrest*. *See Hayward*, 759 F.3d at 611-12. That circumstance does not appear to have occurred here.

Parvin's wife, Campbell, upon arriving at the scene of the call, asked Parvin to step outside the residence while he attempted to determine who the primary aggressor in the situation was. *Id.* at 447. Despite being instructed to step outside several times, Parvin refused to comply and began to resist when Campbell demanded he put his hands behind his back. *Id.* When Campbell reached for his wrist, Parvin pulled back and balled his fist as if to strike Campbell. *Id.* The officer took Parvin to the ground, where he continued to fight, and maced him. *Id.* at 447-48. Parvin was charged with and convicted of resisting arrest. *Id.* at 448.

The Sixth Circuit upheld the district court's grant of summary judgment in Parvin's subsequent § 1983 action against Campbell in light of *Heck*, finding that, as was the case in *Cummings*, the excessive force was "inextricably intertwined" with Parvin's resisting arrest. *Id.* at 450. In doing so, the court noted that Parvin's claim was based "solely on his assertions that he did not resist arrest, did nothing wrong, and was attacked by Campbell for no reason." *Id.* Therefore, the suit "squarely challenge[d] the factual determination that underl[ay] his conviction for resisting an officer and, if he prevail[ed], he [would] have established that his criminal conviction lack[ed] any basis." *Id.* (internal quotation marks omitted). This, the court determined, "is exactly the type of claim that is barred by *Heck*. *Id.*

The alleged excessive force upon Wooten in this case was the shot fired through his truck window by Early. This act was inextricably intertwined with Wooten's aggravated assault conviction for driving his truck toward the officer. Thus, based on the cited precedent, Plaintiff's § 1983 claims against Early in his individual capacity are subject to the *Heck* bar and hereby DISMISSED.[8]

[8]Based on its finding that Plaintiff's federal individual capacity claims are barred under *Heck*, the Court need not address Early's arguments concerning qualified immunity or punitive damages.

*State Law Claims*

Title 28 U.S.C. § 1367 provides that a district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissal all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As all of Plaintiff's federal claims have been dismissed, his state claims are DISMISSED without prejudice.

CONCLUSION

For the reasons set forth above, the motions for summary judgment are GRANTED and the claims of the Plaintiff are DISMISSED. Dismissal of his claims under state law is without prejudice. The Clerk is DIRECTED to enter judgment for the Defendants and remove all settings from the Court's calendar in this matter.

IT IS SO ORDERED this 25th day of March 2020.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE